IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WASTE MANAGEMENT, INC. and WASTE MANAGEMENT HAWAII, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-03676 |
| | § | |
| AIG SPECIALTY INSURANCE COMPANY f/k/a CHARTIS SPECIALTY INSURANCE COMPANY, | § § § § | |
| Defendant. | | |

## ORDER

This insurance dispute stems from a pollution event on the Hawaiian island of Oahu and the ensuing criminal proceedings. In particular, the parties dispute whether the insurer had a duty to defend Plaintiffs in those criminal proceedings. The parties have filed cross motions for summary judgment [Doc. Nos. 42 & 48]. For the reasons set forth below, the Court grants the motion filed by the insurer, AIG Specialty Insurance Company ("AIG") [Doc. No. 48], and denies the motion filed by the insureds, Waste Management, Inc. ("WMI") and Waste Management Hawaii, Inc. ("WMH") (collectively "Waste Management") [Doc. No. 42].

**I.     Undisputed Facts**

Rainstorms hit Oahu in December 2010 and January 2011, leading to flooding in the Waimanalo Gulch Sanitary Landfill ("Landfill").[1] Waste from the Landfill, including syringes, blood vials, catheters, and other medical waste, flowed into the Pacific Ocean and washed up on nearby beaches.[2] The Landfill is operated by WMH.[3]

---

[1] Joint Stipulation and Exhibits, Doc. No. 41 [hereinafter Stipulations].
[2] Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on First and Second Claims for Relief, Doc. No. 42-3 [hereinafter Waste Management MSJ] at 3.
[3] Stipulations.

1

### A. Chronology of Ensuing Proceedings

In January 2011, within a few weeks of the last storm, the United States Environmental Protection Agency ("EPA") issued an Administrative Order on Consent for Removal Action ("AOC").[4] The AOC, which WMH agreed to, ordered WMH to take certain actions and produce information to the EPA in order to respond to the pollution event.[5] The costs to defend and to implement the AOC are not at issue in the pending motions. AIG had no role in the AOC, and Waste Management does not contend that it should have. Nevertheless, as will be seen below, the AOC is part of Waste Management's overall position regarding the duty to defend the criminal case described below. In April 2011, the United States Department of Justice ("DOJ") began a grand jury investigation into the pollution from the Landfill.[6] In August 2011, the EPA notified WMH "that the response work set forth in the AOC is completed to the satisfaction of EPA."[7]

In December 2011, Waste Management gave its first notice of a potential claim to AIG.[8] The notice stated that "THIS IS NOTICE ONLY AS WE ARE NOT YET SURE THIS WILL EXCEED OUR $5 M[I]LL[I]ON SELF-INSURED RETENT[I]ON."[9] In February 2013, WMH and the DOJ entered a tolling agreement for civil claims under the Clean Water Act.[10] In July 2013, the DOJ notified Waste Management that "[i]t is our position that this case is appropriately resolved with a criminal resolution, including felony offenses" and offered a plea agreement.[11]

In April 2014, WMH and two WMH employees were indicted pursuant to a 13-count

---

[4] Stipulations, Ex. B.
[5] Stipulations, Ex. B.
[6] Stipulations.
[7] Stipulations, Ex. C.
[8] *See* Stipulations, Ex. E; Waste Management MSJ at 8.
[9] Stipulations, Ex. E.
[10] Stipulations, Ex. H.
[11] Stipulations, Ex. T.

indictment.[12] Among other charges, the indictment alleged in Count 9 the offense of "knowing discharge of pollutants into a water of the United States, in violation of an [National Pollutant Discharge Elimination System] Permit, and aiding and abetting the same" under 18 U.S.C. § 2[13] and 33 U.S.C. §§ 1311(a), 1319(c)(2)(A).[14] Under 33 U.S.C. § 1311(a), "the discharge of any pollutant by any person" is unlawful except when done in compliance with certain enumerated sections. Under 33 U.S.C. § 1319(c)(2)(A):

> Any person who--
>
>> **(A)** knowingly violates section 1311, 1312, 1316, 1317, 1318, 1321(b)(3), 1322(p), 1328, or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator or by a State, or any requirement imposed in a pretreatment program approved under section 1342(a)(3) or 1342(b)(8) of this title or in a permit issued under section 1344 of this title by the Secretary of the Army or by a State . . .
>>
>> . . . .
>
> shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $100,000 per day of violation, or by imprisonment of not more than 6 years, or by both.

---

[12] Stipulations, Ex. K. In July 2015, the DOJ filed an Information against the same defendants, this time alleging that the defendants negligently discharged pollutants in violation of a National Pollutant Discharge Elimination System permit in violation of 33 U.S.C. § 1319(c)(1)(A). Stipulations, Ex. N.

[13] Under 18 U.S.C. § 2:

> **(a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> **(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[14] Stipulations, Ex. K. The DOJ subsequently filed two superseding indictments. Stipulations, Exs. L, M. Neither party claims that the superseding indictments contained any changes that would be relevant to this case. The counts were renumbered in the superseding indictments, but for the sake of clarity, the Court will refer to the counts by their number in the original indictment.

In Count 9, the indictment alleged that as a January 2011 rainstorm approached, one of the WMH employees decided to leave a manhole open within the Landfill to function as an overflow drain.[15] When the storm arrived, according to the indictment, the area of the Landfill near the manhole flooded, and millions of gallons of contaminated water moved through the manhole, into a pipe, and, after a series of steps, into the Pacific.[16] As stated above, syringes, blood vials, catheters, and other waste were then found in areas and beaches near the Landfill.

In July 2013, AIG denied coverage for "any criminal proceedings, criminal fines, or criminal penalties . . . , including legal fees incurred in connection with the U.S. Attorney General's grand jury investigation."[17] In November 2015, AIG again denied coverage for the criminal proceedings and refused to reimburse WMH for its criminal defense costs.[18] The DOJ informed WMH in August 2016 that it intended to file a civil complaint seeking civil penalties and injunctive relief.[19] In October 2016, AIG agreed to defend WMH from the civil claims the DOJ eventually files, subject to a reservation of rights and the self-insured retention.[20] Consequently, it is only the criminal case that is at issue here.

B.    **The Insurance Policy**

AIG (then known as Chartis Specialty Insurance Company) issued a claims-made "Pollution Legal Liability Select Policy" to WMI for a policy period running from January 1, 2011, to January 1, 2014 (the "Insurance Policy").[21] The parties have stipulated that WMH also qualifies as an "Insured" under the Insurance Policy.[22] The relevant coverage provisions had a limit of $50

---

[15] Stipulations, Ex. K.
[16] Stipulations, Ex. K.
[17] Stipulations, Ex. I.
[18] Stipulations, Ex. O.
[19] Stipulations, Ex. P.
[20] Stipulations, Ex. Q; Transcript of December 14, 2018 Hearing [hereinafter Hearing Transcript] at 13–14.
[21] Stipulations, Ex. A [hereinafter Insurance Policy] at Items 1–2.
[22] Stipulations.

4

million for each incident and a self-insured retention of $5 million.[23]

Coverage D of the Insurance Policy states:

> [AIG agrees to] pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of a **Claim** for **Clean-Up Costs** resulting from a **Pollution Condition**, beyond the boundaries of the **Insured Property** . . . . (bold in the original.)[24]

Coverage E(2) states:

> [AIG agrees to] pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of a **Claim** for **Bodily Injury** or **Property Damage** resulting from a **Pollution Condition** migrating from or through the **Insured Property** . . . .[25]

The Insurance Policy's duty-to-defend provision states:

> When a **Claim** is made against the **Insured** to which Section **I. INSURING AGREEMENTS, 1. COVERAGES, COVERAGES A, B, C, D, E, G, H or I** applies, . . . [AIG] has the right to defend, including but not limited to the right to appoint counsel, and the duty to defend such **Claim**, even if groundless, false, or fraudulent. . . .
>
> Upon the **Insured's** satisfaction of any applicable deductible amount for the Coverage Section that applies and is shown in Item 3. of the Declarations, defense costs, charges and expenses shall be paid by [AIG] and such payments shall be included as **Loss** and reduce the available limits of liability . . . .[26]

"Claim" is defined as:

> a written demand received by the **Insured** alleging liability or responsibility and seeking a remedy on the part of the **Insured** for **Loss** under Coverages A through I.[27]

"Loss" is defined as:

> 1. Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damages; and civil fines, penalties, or assessments for **Bodily Injury** or **Property Damage**;

---

[23] Insurance Policy at Item 3.
[24] Insurance Policy at Endorsement No. 22.
[25] Insurance Policy at Endorsement No. 17.
[26] Insurance Policy at I(2). There is no dispute, at least for purposes of the pending motions, that if the criminal proceedings give rise to a duty to defend, Waste Management has satisfied its deductible.
[27] Insurance Policy at VIII(E).

5

2. Costs, charges and expenses incurred in the defense, investigation or adjustment of **Claims** for such compensatory damages or punitive, exemplary or multiple damages, and civil fines, penalties or assessments, or for **Clean-Up Costs**; [or]
3. **Clean-Up Costs** . . . .[28]

"Clean-Up Costs" are defined as:

> reasonable and necessary expenses, including legal expenses incurred with [AIG's] written consent . . . , for the investigation, removal, treatment including in-situ treatment, remediation including associated monitoring, or disposal of soil, surfacewater, groundwater, . . . or other contamination . . . [t]o the extent required by **Environmental Laws** . . . .[29]

"Environmental Laws" are defined as:

> any federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to the **Pollution Condition**.[30]

The Insurance Policy contains two relevant exclusions:

> This Policy does not apply to **Claims** or **Loss**:
> . . . .
> **D. CRIMINAL FINES, PENALTIES, OR ASSESSMENTS:**
> Due to any criminal fines, criminal penalties or criminal assessments.
> . . . .
> **G. INTENTIONAL NONCOMPLIANCE:**
> Arising from a **Pollution Condition** based upon, due to or attributable to any **Responsible Insured's** intentional, willful or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.[31]

Waste Management contends that the criminal proceedings fall within Coverages D and E(2), obligating AIG to defend. AIG has taken the position that those defense costs are not covered because there was no Claim seeking Loss and, alternatively, because one or both of the exclusions described above apply.

---

[28] Insurance Policy at VIII(U).
[29] Insurance Policy at VIII(F).
[30] Insurance Policy at VIII(K).
[31] Insurance Policy at II(1)(D), II(1)(G).

6

## II. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Whether an insurer has a duty to defend its insured is a question of law." *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 445 (5th Cir. 2018).

## III. Is There a Claim Triggering the Duty to Defend?

### A. Applicable Law

The parties agree that Texas law governs this diversity suit.[32] "When determining whether an insurer has a duty to defend," Texas courts "follow the eight corners rule by looking at the four corners of the complaint for alleged facts that could possibly come within the scope of coverage in the four corners of the insurance policy." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006)). "Resort to evidence outside the four corners of these two documents is generally prohibited." *GuideOne*, 197 S.W.3d at 307. "The eight-corners doctrine 'strictly circumscribe[s]' a court's analysis of the duty to defend." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011) (quoting *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009)); *see also GuideOne*, 197 S.W.3d at 307, 311 (holding that an insurer had a duty to defend pursuant to the eight-corners rule based on the plaintiff's allegations—namely, that she was sexually abused by a church employee during the policy period—even though extrinsic evidence showed that the employee had in fact stopped working for the church before the policy took effect). "In performing its eight-corners review, a court may not read facts into the

---

[32] Waste Management MSJ at 12; Defendant AIG Specialty Insurance Company's Memorandum in Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Doc. No. 48-1 [hereinafter AIG MSJ] at 14 n.6.

7

pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity." *Gilbane*, 664 F.3d at 596 (citing *Nat'l Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997)).

When "reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Merchs. Fast*, 939 S.W.2d at 141; *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("It is not the cause of action alleged which determines coverage but the *facts* giving rise to the alleged actionable conduct." (emphasis in original)).

"The allegations in the petition must be construed liberally in favor of the insured, and all doubts must be resolved in favor of the duty to defend." *Lyda Swinerton Builders*, 903 F.3d at 446 (citing *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)). "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Merchs. Fast*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). "While courts may not read facts into the petition or speculate as to factual scenarios which might trigger coverage under the policy, they 'may draw inferences from the petition that may lead to a finding of coverage.'" *Lyda Swinerton Builders*, 903 F.3d at 447 (quoting *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008)).

"Texas law provides that insurance policies are construed according to common principles governing the construction of contracts . . . ." *Am. Home Assurance Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010)). Under Texas law, "[i]nsurance policy interpretation

8

principles emphasize a policy's plain language in determining its intended coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 131 (Tex. 2010). "For more than a century" the Supreme Court of Texas "has held that in construing insurance policies 'where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.'" *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006) (quoting *E. Tex. Fire Ins. Co. v. Kempner*, 27 S.W. 122, 122 (Tex. 1894)).

### B. Application of the Eight-Corners Rule

AIG contends that the criminal proceedings do not constitute a "Claim." Since the Insurance Policy requires a Claim to trigger any duty and there is no Claim in this case, according to AIG, there is no coverage or duty to defend. Waste Management, by contrast, contends that the Claim in this case is either the AOC and all of the federal proceedings that it initiated, or, alternatively, the indictment alone.[33]

Under the eight-corners rule, the Court will take each potential Claim in this case and look "for alleged facts that could possibly come within the scope of coverage in the four corners of the insurance policy." *Legacy of Life*, 370 S.W.3d at 380. For the reasons stated below, the Court finds

---

[33] In its Amended Complaint, Waste Management also alleges that several letters it received from the "Federal Government" in May, July, and August 2013 (collectively referred to as the "Demand Letters") constitute a Claim. Plaintiffs' First Amended Complaint, Doc. No. 45 at 8. In its Motion for Summary Judgment and Reply brief, however, Waste Management has not argued that the Demand Letters independently constitute a Claim. Waste Management instead asserts that the Claim is the parallel proceedings as a whole (commenced by the AOC) or the indictment. *See, e.g.*, Waste Management, Inc. and Waste Management Hawaii, Inc.'s Reply In Support of Their Partial Summary Judgment Motion and Opposition to Defendant's Cross-Motion for Summary Judgment, Doc. No. 50 [hereinafter Waste Management Reply] at 11 (". . . whether the federal **Claim** is viewed as the parallel proceedings as a whole with the AOC as the originating document, or as the Indictment separately, there is a "**Claim for Loss**" that AIG was obligated to defend under the Eight-Corners Rule."). AIG, by contrast, addresses the letters (or at least two of them) in its Motion for Summary Judgment and contends that "[t]he DOJ letters on which [Waste Management] relies . . . fall far short of constituting a **Claim** for **Loss**." AIG MSJ at 19. Waste Management has not responded to AIG's argument or otherwise addressed the Demand Letters at the summary judgment stage. The Demand Letters, then, provide no grounds on which to grant summary judgment in favor of Waste Management or deny summary judgment to AIG.

that Waste Management has not identified a Claim giving rise to a duty to defend.

## 1. The AOC and Ensuing Federal Proceedings

The EPA issued the AOC in January 2011 and certified "that the response work set forth in the AOC is completed to the satisfaction of EPA" in August 2011. Waste Management first gave notice of a potential claim to AIG in December 2011 and evidently informed AIG of the AOC sometime thereafter. Waste Management explains its argument that the overall federal proceedings that began with the AOC are a single Claim as follows:

> Because the core factual allegations about the discharge of contaminants during the January 2011 storm are the same in each proceeding, and the proceedings were strategically coordinated by a single claimant, all of the federal enforcement activity arising out of that contamination should be viewed as a single **Claim** commenced by the AOC. For purposes of the Eight-Corners Rule, then, it is the AOC that must be measured against the coverage of the [Insurance Policy] . . . .[34]

Comparing the AOC to the Insurance Policy, the Court finds that the AOC is not a Claim that triggers coverage for the criminal proceedings. WMH completed the response work under the AOC to the satisfaction of the EPA before Waste Management ever provided notice to AIG of any potential claim. As AIG avers, at the time Waste Management notified AIG of the pollution event, "*nobody* was demanding that [Waste Management] clean up *anything*, as all clean up required by the AOC had been completed months earlier."[35] In other words, AIG "could not have had a duty to defend against the AOC because by the time [AIG] received notice there was literally nothing to defend, as the AOC had already been negotiated and issued, and all required work had been completed."[36] The Court agrees with AIG's position. The AOC cannot be considered a Claim—"a written demand received by the **Insured** alleging liability or responsibility and seeking a remedy

---

[34] Waste Management MSJ at 21.
[35] Defendant AIG Specialty Insurance Company's Reply in Support of Its Cross-Motion for Summary Judgment, Doc. No. 51 [hereinafter AIG Reply] at 6 (emphasis in original).
[36] AIG Reply at 6.

on the part of the **Insured** for **Loss** . . ."[37]—giving rise to a duty to defend when it had already been handled to the satisfaction of the EPA by the time AIG received notice of it. Waste Management conceded at oral argument that it is not making a claim for the expenses it incurred before notifying AIG, acknowledging that any expenses incurred in 2011 complying with the AOC "would fall within our deductible."[38] Furthermore, Waste Management is not making a claim based upon the AOC; Waste Management wants reimbursement for the amounts it expended in defending the criminal case. Applying the eight-corners rule to the AOC and Insurance Policy, then, shows nothing in the AOC that could potentially trigger a duty to defend subsequent criminal proceedings.

Waste Management additionally argues that the "Claim" is in reality the parallel administrative, criminal, and (potential) civil proceedings and that this Claim was commenced by the AOC. Citing the rule that "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged," *Merchs. Fast*, 939 S.W.2d at 141, Waste Management contends that "the factual allegations that show the origin of the Loss caused by the January 2011 storm are the same in each of the proceedings, only the legal theories advanced differ in the various proceedings."[39] According to Waste Management, there is "one federal claim," albeit with "various iterations," that "has been pending since the AOC was issued."[40] Waste Management offers as evidence DOJ and EPA policies pertaining to the coordination of parallel administrative, criminal, and civil proceedings.[41] Waste Management cites to various portions of these policies in an effort to show that, although the administrative, criminal, and civil proceedings

---

[37] Insurance Policy at VIII(E).
[38] Hearing Transcript at 49.
[39] Waste Management MSJ at 20.
[40] Hearing Transcript at 18.
[41] *See* Stipulations, Exs. X–CC.

may occur separately and sequentially, they are all part of a single federal spear.

The problem with Waste Management's argument is that the "eight-corners doctrine 'strictly circumscribe[s]' a court's analysis of the duty to defend." *Gilbane*, 664 F.3d at 596 (quoting *D.R. Horton–Tex.*, 300 S.W.3d at 744). For the reasons stated above, comparing the four corners of the AOC to the four corners of the Insurance Policy does not trigger a duty to defend the criminal proceedings. It is true that factual allegations rather than the pleaded legal theories or causes of action control the duty to defend, *Merchs. Fast*, 939 S.W.2d at 141; *Adamo*, 853 S.W.2d at 676, but Waste Management has cited no precedent for its position that subsequent criminal or civil proceedings can be lumped into the previously-extinguished AOC for purposes of the eight-corners rule. Likewise, AIG's admission that "[c]ertain aspects of the AOC constitute a 'Claim'"[42] and AIG's agreement to defend Waste Management against any civil proceedings that the DOJ may bring (subject to a reservation of rights and the self-insured retention) do not give rise to a duty to defend against the federal government's abundant arsenal in all of its various facets. It is one thing for a court to look at the factual allegations rather than the legal theories or causes of action pleaded in a complaint; it is a different matter for a court to weld together multiple different administrative, criminal, and potential civil proceedings into a single purported "claim" for purposes of the eight-corners rule. Such a practice would turn the eight-corners rule into a twelve- or sixteen-corners rule, a rule that has not been adopted by the Supreme Court of Texas. The AOC, then, is not a Claim that would trigger AIG's duty to defend subsequent criminal proceedings.

---

[42] Stipulations, Ex. R at 4.

## 2. The Indictment

Waste Management alternatively asserts that the April 2014 indictment standing alone constitutes a Claim because the indictment could result in an order requiring WMH to clean up its environmental violation or a restitution order. Waste Management's argument appears to proceed as follows: Coverage D provides coverage for "**Loss** that the **Insured** becomes legally obligated to pay as a result of a **Claim** for **Clean-Up Costs** . . . ."[43] Loss is defined to include Clean-Up Costs.[44] Clean-Up Costs are defined as expenses incurred for environmental remediation "[t]o the extent required by **Environmental Laws** . . . ."[45] Environmental Laws are defined as "any federal . . . laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to the **Pollution Condition**."[46] Accordingly, an order pursuant to federal criminal laws (Environmental Laws) requiring a party to incur expenses to remediate environmental contamination (Clean-Up Costs) would constitute Loss that the insured became legally obligated to pay as a result of a Claim for Clean-Up Costs.[47] According to this argument, the indictment is a Claim ("a written demand . . . seeking a remedy . . . for **Loss**") that is covered by Coverage D. It is important to note that the Insurance Policy excludes coverage for "**Claims** or **Loss** . . . [d]ue to any criminal fines, criminal penalties or criminal assessments."[48]

---

[43] Insurance Policy at Endorsement No. 22.
[44] Insurance Policy at VIII(U).
[45] Insurance Policy at VIII(F).
[46] Insurance Policy at VIII(K).
[47] Waste Management Reply at 5; Hearing Transcript at 22–23.
[48] Insurance Policy at II(1)(D). Although Waste Management contends that any restitution or remediation order issued in the criminal proceedings would not fall within the exclusion, the United States Court of Appeals for the Fifth Circuit has been clear that restitution imposed in a criminal case is a criminal sentence. *United States v. Pleitez*, 876 F.3d 150, 160 (5th Cir. 2017) ("Restitution is a criminal sentence."); *Rodriguez-Vargas v. Holder*, 516 F. App'x 380, 382 (5th Cir. 2013) ("Our settled law confirms that restitution 'is a criminal penalty and a component of the defendant's sentence.'").

AIG responds that "the Indictment does not seek any **Clean-Up Costs**";[49] in fact, it does not expressly demand any remedy.[50] Rather, it seeks criminal convictions. According to AIG, the eight-corners rule "prohibits judicial creation of a demand for **Clean-Up Costs** that does not exist within the Indictment."[51]

Once again, the Court is compelled to agree with AIG because the "eight-corners doctrine 'strictly circumscribe[s]' a court's analysis of the duty to defend." *Gilbane*, 664 F.3d at 596 (quoting *D.R. Horton–Tex.*, 300 S.W.3d at 744). The four corners of the Insurance Policy require a Claim: "a written demand . . . seeking a remedy . . . for **Loss** . . . ."[52] The indictment does not seek a remedy for Loss. The indictment does not include a demand for any remedy. It only charges WMH and two individuals with crimes. Even assuming that a remediation order or restitution order would not be excluded under the Criminal Fines, Penalties, or Assessments exclusion (and, in the case of a remediation order, assuming that there was still environmental clean-up left to be completed in 2014), there is no statement or express indication within the indictment that it seeks or will seek a remediation or restitution order.[53] Under the eight-corners rule, the Court may not consider the extrinsic evidence that Waste Management offers: the Policy Statement regarding

---

[49] AIG MSJ at 18.
[50] AIG Reply at 8.
[51] AIG MSJ at 18.
[52] Insurance Policy at VIII(E).
[53] Waste Management cites *Precis, Inc. v. Fed. Ins. Co.*, 184 F. App'x 439 (5th Cir. 2006), for the proposition that "simply because there was no monetary demand expressly stated in the Indictment, does not mean one was not sought." Waste Management MSJ at 22. Waste Management's reliance on *Precis* is misplaced. The court in *Precis* considered letters sent to the insured alleging that the insured's actions had wrongfully caused specified dollar amounts of harm and threatened litigation unless a settlement could be reached. 184 F. App'x at 440. The court held that the letters qualified as "a written demand for monetary damages." *Id.* at 441. Waste Management points to the following statement by the court: "Appellants claim that the district court's determination was erroneous because both letters fall short of making a demand for monetary damages. As there is no other purpose for these letters, we disagree." *Id.* In Waste Management's case, however, there were other potential purposes for the indictment—to charge the defendants with crimes, or perhaps to send a message that businesses will face stiff consequences for pollution in Hawaii. The indictment was not clearly or obviously a Claim for Clean-Up Costs.

Remedial Orders and associated Commentary in the Federal Sentencing Guidelines Manual, 1997 and 2007 EPA policy memoranda, and a 2009 DOJ memorandum.

Quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, Waste Management contends that the indictment is a Claim because "[w]here the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy."[54] The United States Court of Appeals for the Fifth Circuit, however, held that the "potentiality" standard is not an exception to the eight-corners rule. *Gilbane*, 664 F.3d at 599. "Although the Texas Supreme Court has held that an insurer has a duty to defend 'if a plaintiff's factual allegations potentially support a covered claim,'" the Fifth Circuit stated, quoting *Zurich*, "it has never applied the 'potentiality' standard to deviate from the eight-corners rule." *Id.* (quoting 268 S.W.3d at 490). "Rather, it has used the standard to characterize the description of claims in the petition, determining whether they potentially were covered." *Id.* In this case, looking only within the four corners of the indictment, the Court finds that the indictment alleges that WMH and two individuals committed crimes. If the Court were to look beyond the indictment to the extrinsic material in Waste Management's exhibits in order to find that the indictment "potentially" stated a covered Claim for Clean-Up Costs, then the Court would be applying the "potentiality" standard to deviate from the eight-corners rule. Under binding precedent, the Court is not permitted to do that.

---

[54] Waste Management MSJ at 22 (quoting 268 S.W.3d at 491) (emphasis added).

### 3. A "Reality" Test?

At oral argument, Waste Management contended that the Court must "look at the realities," citing *McGinnes Indus. Maint. Corp. v. Phoenix Ins. Co.*, 477 S.W.3d 786 (Tex. 2015).[55] According to Waste Management, the DOJ was "obviously . . . seeking a remedy of some sort" with the indictment, and the "question under Texas law is was one . . . of those potential remedies in a remediation order?"[56] The Court has already explained why the alleged "potential" for a remediation order does not transform a criminal indictment barren of such a demand into a Claim for Clean-Up Costs. *McGinnes* does not alter the Court's conclusion.

In *McGinnes*, the Supreme Court of Texas, answering a question certified to it by the Fifth Circuit, ruled that certain letters or an administrative order issued by the EPA during superfund cleanup proceedings under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") constitute a "suit" for purposes of a liability insurance policy, even though they are not court proceedings. *Id.* at 787, 790. The court surveyed the mechanics of EPA enforcement proceedings under CERCLA and found that such proceedings are not merely "the functional equivalent of a suit, but in actuality, they are the suit itself, only conducted outside a courtroom." *Id.* at 791. According to the court, "[t]he [potentially responsible party] notice letters serve as pleadings. The EPA obtains discovery through requests for information, indistinguishable from interrogatories under the rules of civil procedure." *Id.* Furthermore, the EPA "engages in mediation through its invitations to settle. A unilateral administrative order resembles summary judgment. The fines and penalties for willful non-cooperation in the process are like sanctions in a court proceeding, only prescribed by statute." *Id.*

---

[55] Hearing Transcript at 47.
[56] Hearing Transcript at 47.

The court made clear that "EPA enforcement proceedings are unusual: not only are they like judicial proceedings, they were judicial proceedings before CERCLA was enacted." *Id.* at 792.

*McGinnes* does not add a general "reality test" to the eight-corners rule. Rather, it reviewed the "unusual" circumstances of EPA enforcement proceedings under CERCLA and construed an insurance policy in light of those unusual circumstances. The criminal indictment in this case does not become a Claim for Clean-Up Costs by virtue of *McGinnes*'s CERCLA analysis, nor does it become a Claim because the results may ultimately affect a not-yet-filed civil action. While the criminal proceedings may ultimately have an impact on future civil claims through some form of collateral estoppel and may affect AIG's exposure in the civil realm, that does not mean AIG must defend a criminal case in which the government does not make a Claim.[57]

In sum, after comparing the Insurance Policy to the documents that Waste Management offers as potential Claims and applying the eight-corners rule, the Court finds that there is no Claim that triggers AIG's duty to defend.[58]

## IV. Conclusion

For the reasons stated above, the Court GRANTS AIG's Motion for Summary Judgment [Doc. No. 48] and DENIES Waste Management's Motion for Summary Judgment [Doc. No. 42]. Waste Management's first claim for relief (breach of contract with respect to the duty to defend)

---

[57] It also does not mean that the costs of defending the civil action retroactively encompass the criminal defense costs. *Contra* Waste Management MSJ at 21 n.14.
[58] Since the Court has found that AIG had no duty to defend under the eight-corners rule, the Court need not address AIG's additional arguments that the duty to defend is eliminated by the criminal-penalties exclusion (although any criminal penalties or restitution order would clearly be excluded) and the intentional-noncompliance exclusion.

and second claim for relief (declaratory judgment with respect to the duty to defend) are dismissed.[59]

Signed at Houston, Texas, on this 28th day of March, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

---

[59] The parties have agreed to address Waste Management's first and second claims for relief—the claims pertaining to the duty to defend—first. *See* Hearing Transcript at 3–4; Second Joint Motion to Amend Scheduling Order, Doc. No. 34; Amended Scheduling Order, Doc. No. 38. Although there is some suggestion in the parties' briefing that the Court could address claims besides Waste Management's first and second claims for relief in today's order, the Court will respect what it understands to be the parties' agreement. The Court's ruling today accordingly only grants summary judgment to AIG on Waste Management's first and second claims for relief. The Court expresses no opinion on AIG's contention that granting summary judgment against Waste Management on its first and second claims for relief entitles AIG to have Waste Management's remaining claims dismissed as well. Thus, this order remains interlocutory.

Waste Management has argued in part that due to the government's policies of pursuing criminal convictions in order to or as a means to extract civil remedies/damages, this Court should expand the holding of the Supreme Court of Texas in *McGinnes* to encompass related criminal proceedings that may have an impact on the civil litigation (which is waiting in the wings and which, at least in this case, AIG has admitted it will probably have to defend, albeit under a reservation of rights and subject to the self-insured retention). This is problematic because it is contrary to the existing law established by both the Supreme Court of Texas and the Fifth Circuit, and this Court is not authorized to rule contrary to established Fifth Circuit law, nor is the Supreme Court of Texas authorized to accept a certified question from this Court, as the Texas Constitution limits the jurisdiction of the Supreme Court to questions posed by "a federal appellate court." Tex. Const. art. V, § 3-c(a). Nevertheless, given the parties' intent, as expressed at oral argument, to resolve the duty-to-defend question first and/or the ability of the Fifth Circuit to send questions to the Supreme Court of Texas, the Court will certify this case for an interlocutory appeal if either party requests within 14 days of this order.